UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| MOSES C. ORTIZ, | Civil Action No. 17-4986 (JLL) |
|---|---|
| Petitioner, | |
| v. | OPINION |
| SHERRY YATES, et al., | |
| Respondents. | |

LINARES, Chief District Judge:

Presently before the Court is the petition for a writ of *habeas corpus* of Moses C. Ortiz ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging his involuntary commitment under the New Jersey Sexually Violent Predator Act (ECF No. 1). Respondents filed an answer to the petition (ECF No. 8), to which Petitioner has replied (ECF No. 9). For the following reasons, the Court will deny the petition and no certificate of appealability shall issue.

## I. BACKGROUND

Petitioner, Moses C. Ortiz, is currently civilly committed as a sexually violent predator ("SVP") pursuant to the New Jersey Sexually Violent Predator Act (SVPA). (*See* ECF No. 8-11 at 1-2). The Appellate Division summarized the background leading to Petitioner's commitment in its opinion affirming his initial commitment as follows:

> Tried to a jury in 1982, [Petitioner] was convicted of first-degree kidnapping[,] first-degree aggravated sexual assault[,] and third-degree threat to kill[.] The facts underlying the conviction were that [Petitioner], along with a cohort, forced then-sixteen-year-old M.F. into a van where they raped and sodomized her, compelling her to submit by threatening to kill her. On July 27, 1982, [Petitioner] was sentenced to an aggregate term of forty years with a twenty-year parole ineligibility period; [Petitioner]'s sentence "was scheduled to max out . . . on or about July 11, 2007."

1

> On June 21, 2007, the State filed a petition to civilly commit [Petitioner] under the SVPA. A hearing was held on November 26, 27[,] and 29, 2007, at the conclusion of which [a state court judge] rendered a decision from the bench committing [Petitioner] to the [Special Treatment Unit, a facility maintained for civilly committed SVPs].
>
> The evidence adduced at the hearing [included evidence that d]uring his twenty-five years in prison, [Petitioner] incurred twenty-three disciplinary infractions; between 1998 and 2006, [Petitioner] received five disciplinary infractions for exposing his genitals to female corrections officers while masturbating and, on one occasion, deliberately exposing himself in an attempt to "be transferred to a more appropriate prison."

(*Id.* at 2). Based on this criminal history and the testimony of the State's experts, Petitioner was ordered civilly committed, where he has remained confined since that hearing. (*Id.*). While committed, Petitioner has received several annual review hearings, all of which resulted in his continued commitment to the Special Treatment Unit. (*See, e.g.*, ECF No. 8-12).

On July 25, 2014, Petitioner appeared before the state trial level courts for the annual commitment review hearing that is the subject of his current *habeas* challenges. (ECF No. 8-17). At that hearing, the only two witnesses testified, both of whom provided expert testimony on behalf of the State – Dr. Roger Harris and Dr. Zachary Yeoman. (*Id.* at 2). Petitioner did not testify, nor did he present any contrary expert testimony. (*Id.*) At the hearing, Dr. Harris testified that he personally interviewed Petitioner approximately nine days before the hearing and had examined Petitioner's records, including the records of his conviction as well as his disciplinary and treatment records from prison and the Special Treatment Unit. (*Id.* at 3-7). Specifically, in regards to Petitioner's history of exposing himself as encapsulated in his disciplinary history, Dr. Harris testified that Petitioner told him that his acts were "perverted . . . [and] a nasty thing to do[,]" but that he continued to act out because he had "an addiction" to exposing himself. (*Id.* at 8). The

doctor also testified that Petitioner was having difficulty in treatment because he often had angry outbursts during therapy and had, to some extent, "stopped going to treatment." (*Id.* at 15). Based on his acting out and his outbursts during therapy, Dr. Harris opined that Petitioner was "not making many treatment gains," and was "short-circuiting his own progress." (*Id.* at 10).

Based on his review of the records and his interview with Petitioner, Dr. Harris ultimately diagnosed Petitioner with exhibitionism, based on his history of exposing himself, polysubstance abuse, and antisocial personality disorder. (*Id.* at 10-11). Dr. Harris opined that the antisocial personality disorder resulted in "a profound inability . . . to follow social norms, [leading Petitioner] to us[e] others for personal profit or pleasure [and] engaging in impulsive acts without thinking through . . . their impact." (*Id.* at 10-11). Combined with his exhibitionism, the doctor also opined that Petitioner's antisocial personality disorder "increases [Petitioner's] risk to sexually reoffend" and were unlikely to spontaneously remit. (*Id.* at 11-12). As a result of these issues, the doctor found Petitioner "clearly has deficits in his volitional control[,] . . . clearly has deficits in terms of his cognition and the way he views himself and the way he views the world." (*Id.* at 12). The doctor thus concluded that Petitioner was "a high risk to sexually reoffend" and that Petitioner would be "highly likely to sexually reoffend if he were in a less restrictive environment" than the Special Treatment Unit. (*Id.*). When questioned by the judge regarding information in the record suggesting that Petitioner was at one time scored as suffering "severe mental retardation," Dr. Harris qualified that that information is no longer accurate and that he would estimate Petitioner to "[not] even approach mild mental retardation . . . he may be, you know, low average[, b]ut he is not anywhere close to being cognitively impaired." (*Id.* at 23).

Dr. Zachary Yeoman, a member of the panel that recommends treatment levels for patients at the Special Treatment Unit, also testified regarding Petitioner's likelihood to reoffend. (*Id.* at

27). Based on his review of Petitioner's records and history, and a very brief discussion with Petitioner, Dr. Yeoman also scored Petitioner has a high risk to sexually reoffend. (*Id.* at 31). Dr. Yeoman based this opinion on his conclusion that Petitioner is "a profoundly antisocial individual." (*Id.* at 41). Although the doctor noted that Petitioner's behavior had improved in the in recent months prior to the hearing, the doctor fond Petitioner to be "fairly unengaged in treatment" and to have had "a variety of behavioral difficulties over time," especially in the form of exposing himself to staff members. (*Id.* at 29). Ultimately, however, Dr. Yeoman agreed with Dr. Harris that Petitioner has a mental condition which affects him emotionally, cognitively, or volitionally which makes him highly likely to reoffend if his commitment were not continued. (*Id.* at 32). Although Petitioner did not formally testify at the hearing, he did submit a letter to the Court claiming that his continued commitment was unfair, and engaged in a lengthy colloquy with the judge at the annual review hearing regarding some treatment issues he had. (*Id.* at 45-49).

On July 28, 2014, the hearing judge issued his decision ordering that Petitioner's commitment be continued. (ECF No. 8-18). In reaching his decision, the judge reviewed the testimony of Drs. Harris and Yeoman, finding both to be very credible. (*Id.* at 4-5). The judge specifically noted that both doctors in their reports found Petitioner to suffer from antisocial personality disorder and exhibitionism, that these issues affect Petitioner cognitively and volitionally, and that both doctors found him highly likely to reoffend if released. (*Id.*). As the judge found both doctors credible, and because the judge concluded that Petitioner's prior rape offense clearly qualified as a predicate offense, the hearing judge found that the State had "proven by clear and convincing evidence" that Petitioner had been convicted of a sexually violent offense in the form of the rape, and that he had "a mental abnormality [and] personality disorder," and that Petitioner's disorders "presently" made him "highly likely to engage in further acts of sexual

4

violence if not confined" for further treatment. (*Id.* at 5). The judge therefore ordered Petitioner's commitment to continue. (*Id.*).

Petitioner appealed that ruling to the Appellate Division. By way of an opinion issued on April 20, 2015, the Appellate Division affirmed the order continuing Petitioner's commitment. (ECF No. 8-22). In so doing, the Appellate Division noted that Petitioner argued on appeal that "his continued commitment is based on . . . [his] exhibitionism" rather than the conduct that initially led to his commitment – a forcible rape, but rejected this as a basis for overturning the hearing judge's findings as those findings were entitled to deference and because Petitioner "did not support this theory with any evidence or expert testimony." (*Id.* at 4-5). Petitioner thereafter belatedly filed a petition for certification with the New jersey Supreme Court in July 2016, which the New Jersey Supreme Court accepted *nunc pro tunc*, but ultimately denied in January 2017. (ECF Nos. 8-22, 33, 40). Petitioner thereafter filed his current *habeas* petition in July 2017.

While not directly the subject of his current *habeas* challenge, Petitioner had an additional annual review hearing in August 2015. (*See, e.g.,* ECF No. 8-28). Following that review hearing, during which Dr. Harris again testified, Petitioner's commitment was once again ordered to continue. (*Id.*). Petitioner appealed, and the Appellate Division affirmed once again. (*Id.*). In affirming the appeal from the 2015 hearing, the Appellate Division noted that Petitioner once again attempted to argue that he was being held based on his exhibitionism rather than his prior rape offense, which the Appellate Division again rejected, explaining as follows:

> Again, as in his earlier 2014 appeal, [Petitioner] did not support this theory with any expert evidence. Moreover [as in his 2014 appeal], both of the State's experts diagnosed [Petitioner] with an antisocial personality disorder. An antisocial personality disorder is a recognized personality disorder and can be sufficient to require commitment under the SVPA when the symptoms manifest in a sexually violent manner and it reduces the offender's ability to control his or her sexually violent conduct.

5

(*Id.* at 10). Petitioner filed a petition for certification challenging this denial as well, but that petition was denied in November 2016 by the New Jersey Supreme Court. (ECF No. 8-39).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for the purposes of the statute where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state

6

courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B. The New Jersey Sexually Violent Predator Act**

The New Jersey SVPA provides a means for the state to civilly commit individuals who have been convicted of certain classes of sexually violent offenses and therefore qualify as "sexually violent predators." N.J.S.A. 30:4-27.26. Under the act, a person qualifies as an SVP where he

> has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b). This Court has previously explained the process provided for the commitment of an SVP as follows:

> When it appears that a person may meet the criteria of an SVP, an "agency with jurisdiction," such as the New Jersey Department of Corrections, provides notice to the New Jersey Attorney General at least ninety days before the anticipated release of this individual. *Greenfield v. Dep't of Corr.*, Civil Action No. 09-1969, 2011 WL 3203730, at *6 (D.N.J. July 27, 2011) (citing N.J. Stat. Ann. §§ 30:4-27.26; 3:4-27.27(a)(1)). Upon receiving such notice, the Attorney General, if he concludes that the interests of public safety warrant involuntary civil commitment of the individual involved, may bring an action for commitment under the SVPA. *Id.* Under the statute, such an involuntary commitment procedure may follow from the release of an offender from jail so long as the offender suffers from a requisite mental abnormality or personality disorder and the offender is therefore likely to engage in acts of sexual violence if

7

not confined in a secure treatment facility. N.J. Stat. Ann. §§ 30:4-27.26; 30:4-27.28; 30:4-27.32(a).

To initiate the commitment of an individual being released from imprisonment, the Attorney general must file a petition for commitment, supported by "two clinical certifications, one of which must be from a psychiatrist who has examined the individual no more than three days before the submission of the petition for commitment." *Greenfield*, 2011 WL 3203730 at *6 (citing N.J. Stat. Ann. §§ 30:4-27.26, 30:4-27.28). Upon the filing of such a petition, the trial court conducts a temporary commitment hearing where that court examines the supporting certificates and must determine if probable cause exists to believe that the committee qualifies as a sexually violent predator under the act. *Id.* If the court finds probable cause, it issues a temporary commitment order pending a final hearing, which is normally scheduled within twenty days of the initial hearing. *Id.*; N.J. Stat. Ann. §§ 30:4-27.28(f), 30:4-27.29(a).

In advance of the final hearing, the committee is provided with copies of the clinical certificates and their supporting documents, the temporary commitment order, and a statement of the committee's rights at the final hearing. N.J. Stat. Ann. § 30:4-27.30(a). Those rights include the right to counsel and the appointment of counsel if the committee is indigent, the right to be present during the final hearing absent prior conduct which would prevent the court from reasonably conducting the hearing in the committee's presence, the right to present evidence, the right to cross-examine witnesses, and the right to a hearing in camera. *Greenfield*, 2011 WL 3203730 at *6 (citing N.J. Stat. Ann. § 30:4-27.31). Following the appointment of counsel where necessary, the final hearing is conducted. *Id.* At that hearing, the trial court hears evidence, including expert testimony from psychiatrists and members of the treatment team who have treated the committee during his temporary commitment who have within the last five days prior to the hearing conducted a personal examination of the committee. *Id.* If the court, following the hearing, concludes by clear and convincing evidence that the committee qualifies as an SVP, the court issues an order involuntarily committing the SVP to the STU. *Id.* The SVP may thereafter appeal the court's order or petition for discharge from the STU at any time, and by statute will receive annual review hearings at which the state is again required to prove by clear and convincing evidence that commitment as the SVP is warranted. *Id.* (citing N.J. Stat. Ann. §§ 30:4-27.35, 30:4-27.36). Although an individual's commitment as an SVP often follows the end of a criminal sentence, such commitment is civil,

> and not criminal in nature. *See Aruanno v. Hayman*, 384 F. App'x 144, 150 (3d Cir.); *cert. denied*, 131 S. Ct. 835 (2010).

*Shelton v. Main*, 2015 WL 4548813, at *5 (D.N.J. July 27, 2015).

Following his final order of commitment, a civilly committed SVP is entitled to annual review hearings to determine whether the SVP's history, treatment, and mental issues continue to establish a basis for continued commitment. *Bagarozy v. Goodwin*, 2008 WL 4416455, at *7 (D.N.J. Sept. 23, 2008). At the annual review hearings, the state is once again required to show by clear and convincing evidence that the SVP continues to meet the requirements for commitment under the act – that he suffers from a qualifying mental abnormality and that this abnormality makes him likely to reoffend. *Id.* Even aside from his annual reviewing hearings, an SVP can also, at any time, petition for his release based on a change in circumstances, resulting in additional review. *Id.*

## C. Analysis

### 1. Petitioner's Jury Trial Claim

Petitioner asserts that his right to Due Process under the Fourteenth Amendment was violated when he was committed to the Special Treatment Unit without receiving a jury trial. Petitioner is not the first to raise such a claim in relation to the New Jersey SVPA. *See, e.g., Hayman*, 384 F. App'x at 152; *Aruanno v. Goodwin*, No. 07-5205, 2013 WL 3821474, at *9 (D.N.J. July 22, 2013); *Fournier v. Corzine*, No. 07-1212, 2007 WL 2159584, at *15 (D.N.J. July 26, 2007). As the Third Circuit explained in *Hayman*,

> Although [Petitioner] insists that a sex offender must be afforded the right to a jury trial before his involuntary commitment, many of our sister circuits have held to the contrary. For example, in *United States v. Carta*, 592 F.3d 34 (1st Cir. 2010), the First Circuit noted that "the claim to a jury trial right in civil commitments has been

> rejected under not only the Due Process Clause, but also the Sixth and Seventh Amendments." *Id.* at 43 (internal citations omitted)[; a]ccord *Poole v. Goodno*, 335 F.3d 705, 710-11 (8th Cir. 2003); *United States v. Sahhar*, 917 F.2d 1197, 1205-07 (9th Cir. 1990)[;] *cf. Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1256 (10th Cir. 2008) (upholding administrative interpretation of statute regarding detention of certain aliens that did not provide for right to jury trial).
>
> The SVPA serves a regulatory-rather than penal-purpose, because it seeks to protect the public from possible future harm rather than to punish for criminal acts committed in the past. We therefore join our sister circuits in holding that the Constitution does not demand that a jury trial be provided before an individual is involuntarily committed by the state as a sexually dangerous person.

*Hayman*, 385 F. App'x at 151-52. It is thus clear that Petitioner has no federal right to a trial by jury prior to his civil commitment. As the New Jersey State courts have likewise held that there is no state-created Due Process right to trial by jury under the SVP Act, *see Fournier*, 2007 WL 2159584 at *14, Petitioner's jury claim is without and therefore provides no basis for habeas relief.

**2. Petitioner's Sufficiency of the Evidence Claim**

In his remaining claim, Petitioner asserts that the State failed to meet its burden of proof in seeking a continuation of his commitment at his annual review hearing. Where a *habeas* petitioner challenges the sufficiency of the evidence against him, a reviewing court generally must view the facts in the light most favorable to the state and determine if "*any* rational trier of fact could have found the essential elements" to the requisite burden of proof. *See, e.g., Eley*, 712 F.3d at 847 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), in addressing a sufficiency of the evidence challenge in a habeas proceeding attacking a criminal conviction). In so doing, the federal court "must look to state law for the substantive elements" that the state is required to prove. *Coleman v. Johnson*, 556 U.S. 650, 655 (2012). Under the deferential standard the federal courts apply when sitting in habeas review, state court fact-finders have "broad discretion in

deciding what inferences to draw from the evidence presented" and the habeas court must not "unduly impinge[]: the factfinder's role by engaging in "fine-grained factual parsing." *Id.* Thus, so long as a rational factfinder sitting in the place of the state court fact-finder, in this case the judge who conducted the review hearing, could have found all of the required elements for Petitioner's commitment to the necessary standard of proof, Petitioner's challenge must fail. Because Petitioner's claim essentially asserts that the state court's conclusions rest on an unreasonable interpretation of the facts presented at his review hearing, *see* 28 U.S.C. § 2254(d)(2), this Court is mindful that Petitioner can only successfully rebut the presumption that the state court's factual conclusions were correct if he show those conclusions false by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

As this Court noted above, during annual review hearings, the State, in order to continue commitment, must make the same showing as was required for Petitioner's initial commitment. *Bagarozy*, 2008 WL 4416455 at *7. Thus, the state is required to prove, by clear and convincing evidence, that the SVP "has committed a sexually violent offense" and "currently suffers from a mental condition that makes him . . . a sexually violent predator and currently presents a high likelihood of committing sexually violent acts if not committed." *In re Commitment of P.Z.H.*, 873 A.2d 595, 598-600 (N.J. App. Div. 2005). Thus, so long as the evidence provided at Petitioner's hearing is sufficient to permit any reasonable factfinder in the hearing judge's position to find by clear and convincing evidence that Petitioner has committed a sexually violent offense, and that he also suffers from a mental condition that makes him highly likely to commit sexually violent acts, Petitioner's claim must fail.

As summarized above, the hearing record more than supports such a conclusion. At the 2014 annual review hearing challenged in this matter, the State produced two expert witnesses,

both of whom the hearing judge found very credible, who testified that Petitioner has a requisite sexually violent offense in the form of his prior rape conviction, that he suffers from an ongoing mental condition – a combination of strong antisocial personality disorder and exhibitionism which Petitioner himself described as "an addiction" – and that this mental condition makes Petitioner highly likely to sexually reoffend if he were released without further treatment. Petitioner provided no evidence at his hearing to the contrary, and certainly provided no contrary expert testimony. Although Petitioner contends that he is being improperly held based on his exhibitionism rather than because he's likely to once again commit a rape, he has provided no evidence to support this contention, and instead provides only his own base assertion. Both of the expert witnesses who testified at Petitioner's hearing discussed his exhibitionism, in combination with his antisocial personality disorder, not to show that he was only likely to continue to commit exhibitionistic offenses, but instead as indicative of Petitioner's propensity to act out sexually and his apparent inability to fully control his sexual impulses, which the experts opined makes him highly likely to commit a sexually violent offense if released from the Special Treatment Unit. The expert testimony, which the hearing judge found credible, thus establishes that Petitioner has a requisite offense – his rape conviction, has a requisite mental condition – antisocial personality disorder, which the Appellate Division explicitly held meets the criteria of the statute in his 2016 appeal, as exacerbated by his exhibitionism, and that, in their opinion, this condition made it highly likely that Petitioner would commit another sexually violent offense if released.

As this expert testimony was uncontroverted at the hearing Petitioner now challenges, it is clear that a reasonable factfinder could easily have found by clear and convincing evidence that Petitioner met all three requirements for continued commitment if that factfinder found the State's experts credible, which the hearing judge did. Petitioner has failed to present any evidence, let

alone clear and convincing evidence, to show that the hearing judge's factual findings as to the credibility of the experts or as to any of the elements demonstrated by that testimony was improper, nor has he shown that the hearing judge's findings were an unreasonable application of the uncontroverted expert testimony presented at Petitioner's annual review hearing. Petitioner has thus failed to show that the evidence presented was constitutionally insufficient to support his continued commitment, and has also failed to show that the State courts' conclusions amounted to an unreasonable application of the facts. As Petitioner has not attempted to show that their rulings were contrary to any clearly established federal law, he has thus failed to show that he is entitled to habeas relief. His petition is therefore denied.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a *habeas* proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right as jurists of reason could not disagree with this Court's conclusion that Petitioner's claims are without merit, and he has therefore not shown that the issues presented are adequate to deserve encouragement to proceed further. Petitioner is denied a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of *habeas corpus* is DENIED, and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

JOSE L. LINARES,
Chief Judge, United States District Court